```
 1                UNITED STATES DISTRICT COURT

 2                      DISTRICT OF MAINE

 3    _____

 4    UNITED STATES OF AMERICA,           CRIMINAL ACTION

 5              Plaintiff        Docket No: 2:24-cr-00011-LEW-1

 6

 7         -versus-

 8

 9    JERVIS ALMANZAR,

10              Defendant
      _____
11
                    Transcript of Proceedings
12

13    Pursuant to notice, the above-entitled matter came on for
      Sentencing held before THE HONORABLE LANCE E. WALKER, United
14    States District Court Judge, in the United States District
      Court, Edward T. Gignoux Courthouse, 156 Federal Street,
15    Portland, Maine, on the 30th day of January 2025 at 3:18 p.m.
      as follows:
16

17    Appearances:

18    For the Government:   Noah Falk, Esquire
                            Assistant United States Attorney
19
      For the Defendant:  James A. Clifford, Esquire
20
      Also Present:  Heather Belanger, U.S. Probation
21
                  Lori D. Dunbar, RMR, CRR
22                Official Court Reporter

23           (Prepared from manual stenography and
                  computer aided transcription)
24

25
```

1       (Open court. Defendant present.)

2       THE COURT: We're here for sentencing in United

3  States versus Jervis Almanzar. This is Criminal Case

4  No. 2:24-cr-11-LEW. I'll have counsel please introduce

5  themselves for the record.

6       MR. FALK: Good afternoon, Your Honor. Noah Falk

7  for the Government.

8       THE COURT: Good afternoon.

9       MR. CLIFFORD: Good afternoon. James Clifford for

10  Mr. Almanzar. And I would like to apologize on his behalf. I

11  sent a note earlier. He had some problems getting here with

12  traffic.

13       THE COURT: I understand, thank you, Mr. Clifford.

14  Good afternoon, Mr. Almanzar. Pardon me. Mr. Almanzar,

15  the purpose of the hearing today of course is for me to

16  sentence you based on your conviction. To that end I'm going

17  to hear from both of the lawyers and from you if you wish and

18  from anyone else who the attorneys wish to present to the

19  Court to speak on your behalf or for any other reason.

20       I'm going to ask you a few questions and I'm going to

21  ask Mr. Clifford a few questions. The reason I'm going to do

22  that is I want to be sure that you've read and understand the

23  revised presentence report. I also want to be sure that

24  there's nothing that interferes with your ability to

25  understand what's happening here today, and overall and most

1    obviously I want to be sure that by the time we reach the end
2    of the hearing today you understand the sentence that I've
3    imposed and the reasons that I've imposed it.  Does that all
4    make sense so far?
5             THE DEFENDANT:  Yes, sir.
6             THE COURT:  Thank you.  Are you currently taking any
7    medication, sir?
8             THE DEFENDANT:  Medication?
9             THE COURT:  Yes.  No?  You need to answer verbally,
10   okay, and speak right up.
11            THE DEFENDANT:  No, I haven't been taking
12   medication.
13            THE COURT:  All right.  Have you consumed any drugs
14   or alcohol in the last 24 hours?
15            THE DEFENDANT:  No, I haven't.
16            THE COURT:  Is there anything that you can think of
17   that may interfere with your ability to understand what's
18   happening here today?
19            THE DEFENDANT:  No.
20            THE COURT:  How far did you go in school?
21            THE DEFENDANT:  I graduated high school.
22            THE COURT:  You can read and write?
23            THE DEFENDANT:  Yes.
24            THE COURT:  All right.  And do you authorize
25   Attorney Clifford to speak on your behalf throughout the

```
 1   hearing today?
 2              THE DEFENDANT:  Yes.
 3              THE COURT:  Thank you.
 4        Attorney Clifford, have you read and discussed with the
 5   defendant the revised presentence report?
 6              MR. CLIFFORD:  Yes, I have, Your Honor.
 7              THE COURT:  Did you have enough time to do that?
 8              MR. CLIFFORD:  Yes.
 9              THE COURT:  Are you confident that Mr. Almanzar
10   understands that report?
11              MR. CLIFFORD:  Yes, I am.
12              THE COURT:  Okay.  And I understand -- and I'll come
13   back to this in a minute -- I understand that there are two
14   outstanding objections.
15        Mr. Almanzar, have you read the revised presentence
16   report in its entirety?
17              THE DEFENDANT:  Yes.
18              THE COURT:  Mr. Clifford tells me that you -- he
19   feels you understand the report.  Do you feel you understand
20   the report?
21              THE DEFENDANT:  Yes, I do.
22              THE COURT:  Did you have enough time to ask Mr.
23   Clifford any questions you might have had about that report?
24              THE DEFENDANT:  Yes.
25              THE COURT:  And did he answer all of your questions
```

1 to your satisfaction?

2 THE DEFENDANT: Yes.

3 THE COURT: Okay. All right. Mr. Clifford,

4 anything else -- I've read both of the respective briefs

5 related to, among other things, the objections to the report.

6 Anything else to add about those objections?

7 MR. CLIFFORD: I spoke with Ms. Belanger earlier

8 today. I'm glad that she called. And I don't think that

9 there are issues that are going to affect either the sentence

10 or they're not really material disputes, and it -- whether I

11 withdraw them or we defer to your judgment on that, I would

12 just leave it at that.

13 THE COURT: Okay, fair enough. That's exactly how I

14 was going to rule which was decline to rule on them because

15 that's not going to -- given the posture of the case, it's not

16 going to affect the sentence. Thank you for that.

17 All right. And no objections to the report from the

18 Government's perspective?

19 MR. FALK: Correct, Your Honor.

20 THE COURT: All right. Thank you, sir. You can

21 have a seat.

22 Mr. Falk, would you like to be heard on sentence?

23 MR. FALK: Just very briefly, Your Honor.

24 We submitted a memorandum that I think lays out the

25 Government's position pretty clearly. I'll just emphasize for

```
 1      the record that the Government's recommending the mandatory
 2      minimum here.  It is above the advisory guideline range
 3      slightly, but the Government feels that the mandatory is
 4      appropriate here given the gravity of the conduct.
 5      Trafficking in fentanyl is of course hugely dangerous, deadly
 6      drug.  And really what is driving the Government's interest in
 7      this case in particular is the defendant's affiliation with
 8      the Trinitario street gang, which he -- as we point out in our
 9      memo, he had the opportunity to avail himself of safety valve,
10      get out from under the mandatory minimum, chose not to do so.
11      And it's the Government's feeling that that really evinces
12      just a lack of remorse on the part of the defendant.
13           We are very concerned that we're going to see this
14      defendant again before the Court, hopefully not but I
15      anticipate for more serious conduct than the conduct at issue
16      here.  I feel like the defendant is really on an escalator to
17      more significant criminal conduct given his gang affiliation
18      and given his posture and attitude with respect to how this
19      case has proceeded.  So for those reasons we're recommending
20      the minimum, Your Honor.
21                THE COURT:  Thank you.
22           Mr. Clifford, would you like to be heard?
23                MR. CLIFFORD:  Thank you, Your Honor.  I'll just
24      come up to the podium.
25                THE COURT:  Of course.
```

1          MR. CLIFFORD:  As to some of the comments that were
2     just made, the reasons for not taking advantage of the safety
3     valve are not as stated, and there are lots of different
4     reasons for someone to make that decision.  And I would ask
5     that anything that has been suggested is merely speculative,
6     and what he does in his future is not something that we can
7     predict or use against him.  So that was really the nature of
8     my objections initially.
9          What we do know about Jervis Almanzar is he's 20 years
10    old; he's a new father; he's a high school graduate.  He's
11    done everything that the probation department has asked of
12    him.  I spoke with his Massachusetts-based probation officer;
13    I recently spoke with Ms. Belanger.  We will be asking that
14    the Court allow him to self-report and just leave it at that.
15    We'll leave it to the Court's discretion on that.  I know that
16    there are a number of factors and a number of elements to
17    that.  I just -- I'm leaving it to your discretion.  He would
18    like and appreciate that, he has complied with the terms, but
19    he's prepared to be detained.
20         His parents are here today.  His daughter, Analia, would
21    have been here today but she's sick.  This is a picture of
22    her.  She I think is about three or four months old.  And
23    Jervis has been through quite a lot this year, both good and
24    bad, and I think he's going to have some time to think about
25    that, and hopefully he makes some really good decisions.

1    And one indicator of a good decision in his future --
2    good decisions in his future is the fact that he's asking the
3    Court to recommend the 500-hour RDAP program.  And I think
4    that is -- speaks to his willingness to make some changes in
5    his life and that along with the recommendation that he be
6    sent -- or serve his term at Fort Dix in New Jersey, where
7    he'll be relatively close to family members, shows that he can
8    and has opportunities to make changes starting with that.  And
9    I don't need to tell the Court about that.  It's a very good
10   program, it changes lives, and if he participates he'll get
11   some time off and he'll have a chance to -- as a really young
12   man to have another shot and -- with his daughter and with his
13   family.
14       So other than that I just, you know, I can answer any of
15   your questions, but I don't have a lot to work with here on
16   the guidelines.  It's -- just leave it at that.
17           THE COURT:  Understood.  Thank you, Mr. Clifford.
18           MR. CLIFFORD:  Thank you, Your Honor.
19           THE COURT:  All right.  Mr. Almanzar, as the
20   defendant before the Court for sentencing you have the right
21   to address the Court.  You're not obligated to say anything,
22   don't have to say anything if you don't wish, but that is your
23   right.  So if you would like to say something to me this is
24   your opportunity to do that, and I would be happy to listen to
25   you, sir.

1           THE DEFENDANT:  I don't have nothing to say.
2           THE COURT:  Okay.
3       Anything else from the Government, Mr. Falk?
4           MR. FALK:  No, Your Honor, thank you.
5           THE COURT:  All right.
6       Okay.  I've reviewed the revised presentence report in
7   preparation for the hearing.  I adopt that report in its
8   entirety as constituting my findings, so let's do some
9   guidelines math.
10      Under the applicable provisions of the sentencing
11  guidelines I find that the total offense level for defendant's
12  offense is 23, Criminal History Category I, which yields a
13  sentencing range of 46 to 57 months.  However, of course, as
14  has been referenced, the statutory authorized minimum sentence
15  is 60 months, and, therefore, the guidelines term of
16  imprisonment is 60 months.  Supervised release of at least
17  four years, fine range of $20,000 to $10 million.
18      Mr. Falk, any objection to those findings?
19          MR. FALK:  No, Your Honor.
20          THE COURT:  Mr. Clifford?
21          MR. CLIFFORD:  No, other than he can't afford to pay
22  the fines, but the guidelines math is correct.
23          THE COURT:  Okay, thank you.
24      Mr. Almanzar, I've carefully reviewed the revised
25  presentence investigation report.  I take it into account in

1  fashioning a fair and appropriate sentence in your case.  I
2  also consider what I've heard from both of the lawyers.
3       And in determining sentence, as you probably know from
4  conferring with Mr. Clifford, I have to do two things.  I have
5  to consider what the sentencing guidelines have to say, that's
6  the numbers that I've just announced; and I also have to
7  consider all of the other sentencing factors which are listed
8  under a federal statute which you'll hear the lawyers refer to
9  often as 3553(a) factors.  I've done all of that.
10      You pled guilty to two counts, Counts 1 and 2 in the
11 indictment, distribution and possession with the intent to
12 distribute controlled substances.  I'm not going to harbor
13 much on a couple of key findings, but let me make a couple of
14 key findings regarding the nature and circumstance of the
15 offense.
16      As has been pointed out in the briefs in the run-up to
17 today's hearing and as I'm hoping that you can appreciate
18 from -- in Maine from Kittery to Fort Kent but all over the
19 country part of the health -- public health pandemic that
20 wasn't called COVID related to the distribution and
21 consumption of these types of drugs which has the tragic
22 effect of causing generational harm at best and causing
23 premature death at worst and all too frequently, and I say
24 that not to chastise you because that's nowhere in my judicial
25 oath.  I say it because it's important for you.

```
 1              Mr. Falk pointed out that he's concerned about the
 2     escalating nature of your associations and conduct and how
 3     that may predict that you may be seen in this or a similar
 4     court in the future.  What I'd like you to do is prove him
 5     wrong.  But in the proving him wrong it's important to start
 6     in a place that resembles something that looks like something
 7     like the truth.  And the truth -- part of the truth, at least,
 8     is to acknowledge your role in this bleak marketplace of death
 9     and destruction to too many families.
10              In terms of the -- your personal history and
11     characteristics, I can't add much more than Mr. Clifford has
12     already added in his paper submitted to the Court, along with
13     the probation officer in her thoughtful probation report that
14     you -- that I referenced and that you've read.  And I take
15     those factors into account as well.
16              In imposing the sentence that I'm going to impose I
17     believe that it satisfies my charge to impose a sentence that
18     is sufficient but not greater than necessary to correspond to
19     the need for the sentence.  Among the 3553(a) factors that
20     leap out to me in this case is the seriousness of the offense,
21     the importance to afford adequate deterrence, and protect the
22     public from further crimes by you.
23              Mr. Falk, have I addressed all of your contentions
24     regarding sentence before I actually impose sentence?
25                    MR. FALK:  Yes, Your Honor.
```

1          THE COURT: Mr. Clifford?
2          MR. CLIFFORD: I believe so, yes.
3          THE COURT: Thank you.
4     Mr. Almanzar, based on all these considerations I
5 conclude that a just and fair sentence is as follows:
6          Defendant is committed to the custody of the United
7 States Bureau of Prisons to be imprisoned for a total term of
8 the statutory minimum 60 months as to both Counts 1 and 2 to
9 run concurrent. I'll make the recommendations as requested to
10 the Bureau of Prisons; that is, the 500-hour residential drug
11 treatment program, along with placement at Fort Dix.
12         Upon release from imprisonment the defendant will be on
13 supervised release for a term of five years. Although it was
14 part of the revised presentence report, any objections to the
15 conditions of release, Mr. Clifford?
16         MR. CLIFFORD: No, Your Honor.
17         THE COURT: Waive reading of those?
18         MR. CLIFFORD: Yes.
19         THE COURT: Thank you. Yes?
20         PROBATION OFFICER: Your Honor, may I approach?
21         THE COURT: Yes.
22     (The Court conferred with the probation officer.)
23         THE COURT: All right. Let me just make a --
24 Probation Officer Belanger just pointed out a possible
25 amendment to the special condition related to gang

1    associations.  And the -- so what I'll do is I'll read the
2    condition as it's been provided to counsel, and this is in the
3    revised presentence report, and then I'll offer what I propose
4    be a slightly different version of that condition.
5        The proposal is the condition should read:  Defendant
6    shall have no communication or contact with any member or
7    associate of any organized crime group or street gang -- and
8    this is I think the critical part -- that he knows or should
9    have known is associated with an organized crime group or
10   street gang.
11       So I know that I'm pawning this on Mr. Clifford at the
12   very last minute.  I'm happy to take a recess, Mr. Clifford,
13   if you'd like and discuss with Probation Officer Belanger.
14   And I'm also happy to have a further -- I will have a further
15   conversation about the proposed condition here in open court.
16   But if you would like to respond, go ahead.
17       MR. CLIFFORD:  First of all, I want to make sure
18   that I understand where this is going in the report.  Would it
19   be paragraph 63 and you would be adding essentially
20   subparagraph 5 below that?
21       THE COURT:  That's right.
22       MR. CLIFFORD:  Okay, and that -- the gist of this is
23   that he should have no contact with any gang members known or
24   otherwise and his obligation to report that or was -- not
25   that -- that wasn't in there; was it?

1  THE COURT: No, that -- that he should have no
2  communication or contact with any member or associate -- and I
3  think the word associate is new language -- of any organized
4  crime group or street gang -- and the following language is
5  new related to what he should know -- that he knows or should
6  have known is associated with an organized crime group or
7  street gang. In other words, it has the functional effect of
8  putting a mens rea requirement in the condition.
9  MR. CLIFFORD: Okay, just give me --
10  THE COURT: Of course, yeah.
11  (Defendant conferred with counsel.)
12  MR. CLIFFORD: I think we should be okay, Your
13  Honor.
14  THE COURT: Okay, good. All right. I find that
15  there's a special assessment imposed of a hundred dollars, and
16  I also find that the defendant does not have the ability to
17  pay a fine so I'm waiving a fine in this case.
18  Mr. Almanzar, let me just review with you if I can
19  the -- your right to appeal. If you feel you have a basis to
20  appeal your sentence and conviction, what you have to do is
21  file with the clerk of court within 14 days of today and not
22  thereafter a written notice of appeal. If you fail to timely
23  file a written notice of appeal, you'll have given up your
24  right to appeal the sentence and conviction. And, finally, if
25  you cannot afford to file an appeal you can appeal without any

```
 1    cost to you.  All you have to do is ask the clerk of courts
 2    that you'd like to file a notice of appeal and she will
 3    prepare and file a notice of appeal on your behalf.
 4         Do you understand those appeal rights, Mr. Almanzar?
 5              THE DEFENDANT:  Yes.
 6              THE COURT:  Thank you, sir.  The issue --
 7    Mr. Clifford, I think I heard you correctly at the beginning
 8    but I don't want to cut you off, but I know that you mentioned
 9    that you may be asking for self-surrender.  Maybe you just
10    already have.  If you'd like to elaborate you're welcome, but
11    if not I'll take it under advisement and hear from the
12    Government.
13              MR. CLIFFORD:  I do not have anything further to add
14    but it would be a request.
15              THE COURT:  Thank you.  Mr. Falk?
16              MR. FALK:  Yes, Your Honor.  It's a mandatory
17    detention case, and for that reason and because of the issues
18    that I have touched on during the course of this proceeding I
19    think it's appropriate at this time that the defendant go into
20    custody.
21         This proceeding has -- or this prosecution has been
22    pending for quite some time; the indictment came down
23    approximately a year ago.  It has been pushed out many times
24    at the defendant's request, including recently to allow for
25    him to spend additional time with his family prior to this
```

1  proceeding.  And the Government feels that we've really
2  reached the end of the road here and it's time for him to go
3  to jail.
4          THE COURT:  Understood.  I agree.  The defendant's
5  remanded to the custody of the United States Marshal in
6  execution of the sentenced imposed.  And the reason for that,
7  Mr. Almanzar, is fairly straightforward, for all the reasons
8  that the Government has stated, but in addition to that the
9  statute requires me in a mandatory detention case if I'm going
10 to release you and allow you to self-report that there be
11 exceptional circumstances articulated.  Finding nothing that
12 approaches exceptional circumstances, I'm going to remand you
13 to the custody of the United States Marshal in execution of
14 the sentence imposed.
15         Anything else from the Government, Mr. Falk?
16         MR. FALK:  No, thank you, Your Honor.
17         THE COURT:  Thank you, sir.  Anything else, Mr.
18 Clifford?
19         MR. CLIFFORD:  No, thank you, Your Honor.
20         THE COURT:  Thank you, we're in recess.
21                  (Time noted:  3:36 p.m.)

**C E R T I F I C A T I O N**

I, Lori D. Dunbar, Registered Merit Reporter, Certified Realtime Reporter, and Official Court Reporter for the United States District Court, District of Maine, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated:  August 4, 2025

       /s/ Lori D. Dunbar

       Official Court Reporter